IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILLIAN McNAMARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 5 |
| ) | |
| GLEN ELLYN SCHOOL ) | |
| DISTRICT NO. 41, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Jillian McNamara has sued her former employer, Glen Ellyn School District 41, for violating her rights under the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA). The District has moved for summary judgment on all of McNamara's claims. For the reasons stated below, the Court grants the District's motion in part and denies it in part.

### Background

    Glen Ellyn School District 41 is a public school district that operates four elementary schools and a junior high school and employs or contracts for the services of approximately five and one-half school psychologists. Jillian McNamara was employed by the District as a licensed school psychologist at Forest Glen Elementary School. McNamara's employment began at the start at the 2019-20 school term and concluded with her resignation on March 2, 2021. During this period, McNamara's primary job involved managing the evaluation process for special education students

seeking Individualized Education Plans. Her caseload comprised early childhood evaluations for students coming from early intervention. The evaluation process is individualized based on a given student's needs. It is complicated, lengthy, and must be completed within sixty school days or the school is subject to citation by the State Board of Education.

During the COVID-19 pandemic, McNamara and all other school district faculty and staff worked remotely. In July 2020, prior to commencement of the 2020-21 academic year, McNamara requested to work from home during the upcoming school term as an accommodation for migraine headaches. She and her doctor suspected that mold or dust in her basement office exacerbated her ailments. On August 3, 2020, McNamara had a call with district officials to discuss her request. They determined that McNamara would work with the school principal to find a new office. When McNamara returned to work in person that October, she was moved to a different workspace.

On October 15, 2020, the District began a combination of remote and limited in-person educational services for kindergarten through fifth grade students. McNamara returned to part-time-in-person work. Also in October 2020, McNamara's daughter was hospitalized for ten days and diagnosed with generalized anxiety disorder, major depressive disorder, and ADHD. On October 23, 2020, McNamara reported this hospitalization to Jennifer Ng, a human resources specialist for the District, and sought an accommodation to work from home to care for her daughter, who could not be left without supervision. The District granted McNamara a childcare accommodation to work from home under the Families First Coronavirus Relief Act (FFCRA) until the Act expired on December 31, 2020. School principal Scott Klespitz, Director of Student

Services Laurel O'Brien, and Ng all became aware of McNamara's daughter's health condition and hospitalization through communication with McNamara.

On December 8, 2020, the District communicated that all employees with childcare accommodations under the FFCRA would be required to return to their normal in-person work schedule on January 4, 2021, due to the FFCRA's expiration. On December 17, McNamara requested and was approved for intermittent FMLA leave to care for her daughter after the winter holiday. On December 28, McNamara reached out to Ng again to ask if the district would provide flexibility for staff with valid reasons to work from home because it was clear the FFCRA would not be renewed. She also asked if it would be possible to work for home under the FMLA, as she had under the FFCRA, or if her previous request for a work from home accommodation for her migraines could be implemented. On December 29, Ng responded that the District was not able to offer accommodations to work from home under the FMLA for dependent care. Ng also stated that McNamara's earlier accommodation request had been satisfied by providing her with a different office.

McNamara's intermittent FMLA leave was scheduled to begin on January 4, 2021 and continue through March 16, 2021. Prior to the beginning of her leave, McNamara reached out to Ng to ask what would happen to her caseload while she was on leave. Ng responded, "[w]e are hopeful we'd be able to hire additional support while you are on leave." Def.'s Stmt. of Material Facts, Ex. 2 at Ex. 9, p. 9. Marci Conlin, the District's Assistant Superintendent of Human Resources, also told Ng that McNamara would be given a reduced work schedule while she was on intermittent FMLA leave.

In January 2021, McNamara began her intermittent leave, during which she was

3

at school twenty to sixty percent of the time.  Another school psychologist at Benjamin Franklin Elementary School began a leave of absence that would last through the end of the year.  On January 29, Laurel O'Brien, whose responsibilities included assigning work to school psychologists and dealing with workload issues, sent an email to all of the psychologists in the district asking them to help cover the caseload of the Benjamin Franklin psychologist.  No similar request was ever made regarding McNamara's caseload.  McNamara responded to O'Brien's email the same day, telling O'Brien that she was on FMLA leave and working part time, "spread really thin," struggling with her responsibilities, and could not be in the building more often or take on new work.  Pl.'s Stmt. of Material Facts, Ex. 6.  On February 12, McNamara told Ng that there had not been coverage for her while she was on leave and that "things [were] very tight."  Def.'s Stmt. of Material Facts, Ex. 2 at Ex. 11, p. 4.  On February 22, McNamara emailed Klespitz and O'Brien to advise them that she still had not been provided coverage for her caseload and could not complete her work and that deadlines were going to be missed unless there was additional support provided to the Forest Glen team.  She identified the most pressing needs at Forest Glen and proposed some meetings she could skip.  On February 23, Klespitz responded that missing the proposed meetings was fine and that he was still trying to work through the coverage issues and did not have answers for McNamara yet.  O'Brien followed up the same day, saying that though she understood there was a lot on McNamara's plate, they needed to move two reevaluations for future kindergarteners at Benjamin Franklin Elementary to her and the Forest Glen team.

      On February 24, McNamara replied, reminding O'Brien and Klespitz that she was

4

working a reduced schedule, that she had indicated on January 29th that she lacked capacity for additional evaluations and received no response, and that the deadlines for the cases O'Brien referenced gave her a fraction of the time typically available to complete them. She also reiterated the need for additional help to offset her reduced schedule. McNamara received no response to this email. On February 26, McNamara went on full time FMLA leave. She resigned on March 2, 2021. The District did not hire anyone to handle McNamara's duties until after she resigned.

McNamara has sued the District under the ADA for failure to accommodate a disability, discrimination on the basis of disability, association discrimination, retaliation, and constructive discharge. She has also sued the District under the FMLA for interference with her rights under the statute, retaliation for asserting those rights and complaining about the FMLA interference, and constructive discharge.

## Discussion

The District has moved for summary judgment on all of McNamara's claims. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting specific evidence or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). In ruling on a motion for summary judgment, the Court views all facts in the light most favorable

to the non-moving party and draws all inferences in their favor. A grant of summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A. ADA claims**

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). In her complaint, McNamara alleged that the District discriminated against her under the ADA by denying her work from home accommodation request, overloading her with work, discriminating against her because of her association with an individual with a disability, retaliating against protected activity, and constructive discharge. Compl. ¶ 26.

McNamara concedes the District's arguments on her claim of failure to accommodate under the ADA. Pl's Mem. at 2 n.1 ("McNamara does not address herein her ADA failure to accommodate claim and concedes [the District's] argument on this claim."). And she has offered no evidence or argument to the District's properly supported motion regarding her other ADA claims, except for her claim of discrimination based on association. Accordingly, the Court grants summary judgment in favor of the District on McNamara's claims of failure to accommodate, disability-based discrimination, retaliation, and constructive discharge under the ADA. The Court next discusses the association discrimination claim.

The ADA's association-based discrimination provision prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a

6

relationship or association." 42 U.S.C. § 12112(b)(4). In the past, the Seventh Circuit distinguished between "direct" and "indirect" methods of proving a discrimination claim. *See e.g.*, *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No.* 522, 657 F.3d 595, 601 (7th Cir. 2011). This is no longer the case. The court has clarified that the single determinative inquiry is whether the plaintiff has offered evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). All evidence, direct or indirect, "belongs in a single pile and must be evaluated as a whole." *Id.* at 766. In this case, McNamara must show that her association with her disabled daughter caused the adverse employment action she alleges.

The Seventh Circuit has specified that one way a plaintiff may sustain an association discrimination claim is through a modified version of the *McDonnell Douglas* framework, in which the plaintiff provides evidence that (1) she was subjected to an adverse employment action; (2) she was qualified for the job at the time of the adverse action; (3) her employer knew she had a relative or associate with a disability at the time; and (4) her case falls into one of the three relevant categories of expense, distraction, or association. *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 948 (7th Cir. 2008) (citing *Larimer v. IBM Corp*, 370 F.3d 698, 700-02 (7th Cir. 2004)).

The expense category generally includes a situation where an employee's "[relative] has a disability that is costly to the employer because the [relative] is covered by the company's health plan." *Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir. 2004). The distraction category arises where an employee "is somewhat inattentive at work

7

because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation." *Id.* And the association category "occurs when an employer fears that the employee may have become infected with a disease because of the known disease of an associate of the employee." *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 807 (7th Cir. 2020) (citing *Larimer*, 370 F.3d at 700). The Seventh Circuit recently clarified that "the three situations we identified in *Larimer*"—expense, distraction, and association—"were not meant to be exhaustive." *Pierri*, 970 F.3d at 807. But a plaintiff still must advance a theory of associational discrimination that is supported by evidence. *Id.*

        The District is entitled to summary judgment on McNamara's association discrimination claim. McNamara has provided no evidence that her case fits within the Seventh Circuit's *Larimer* framework. She has provided no evidence to support her argument that similarly situated school psychologists were treated more favorably. And she has advanced no other theory of associational discrimination that is supported by evidence. As a result, no reasonable jury could find a causal connection between her association with her daughter and any alleged adverse employment action by the District—either the denial of her work from home request or the assignment of additional work

        Even if the Court assumes there is sufficient evidence to convince a reasonable jury of the first three elements of the 7th Circuit's indirect evidence test—"(1) she was qualified for the job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) she was known by her employer at the time to

8

have a relative or associate with a disability"—McNamara has not provided evidence that her case fits into the categories of expense, distraction, or association. There is no evidence of expense to the District because of her daughter's disability, and McNamara's case does not satisfy the distraction category because she did need an accommodation to care for her daughter. Nor does her case fit the Seventh Circuit's association category because her daughter's "medical afflictions are neither communicable to [plaintiff] nor predictive of [her] becoming ill or disabled." *Larimer*, 370 F.3d at 701.

McNamara's primary argument is that the District improperly discriminated against her on the basis of her association with her disabled daughter by denying her request to work from home while on FMLA leave, while granting the requests of other similarly situated school psychologists who were not associated with disabled individuals. Pl.'s Resp. at 12-14. The District, however, has presented uncontested evidence that the psychologists McNamara identified were not similarly situated. Specifically, the two other school psychologists that were allowed to work from home under the FMLA did so due to their own medical needs, not due to a relative's needs. Def.'s Stmt. of Material Facts, Ex. 2 ¶ 17. By contrast, McNamara's FMLA leave was not for her own ailments but for those of her daughter. Though the District allowed employees to work from home as an accommodation for their own medical needs, it did not have a policy allowing them to do so in order to care for family members. Def.'s Stmt. of Material Facts, Ex. 2 ¶ 18. This indicates that the other psychologists were not similarly situated, invoked different aspects of the FMLA, and were thus subject to different school district policies.

McNamara has presented no evidence or argument to address the District's contentions on this point or to suggest that there was a school psychologist also taking FMLA leave for childcare or family care purposes who was permitted to work from home. With no evidence that any similarly situated school psychologist was treated more favorably, no evidence that her case fits into the Seventh Circuit's defined categories, and no other basis for a claim of association discrimination supported by evidence, no reasonable jury could not find in McNamara's favor on this claim.

To the extent McNamara also alleges that she was assigned additional work because of her association with her daughter, *see* Compl. ¶ 26, she offered no evidence or argument to support this contention in response to the motion for summary judgment.

Accordingly, the District is entitled to summary judgment on all of McNamara's ADA claims.

**B.    FMLA claims**

The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). Nor may any employer "discharge or in any other manner discriminate against any individual for opposing any practice" the Act makes unlawful. 29 U.S.C. § 2615(a)(2). This includes retaliation for an employee's choice to exercise her rights under the FMLA. *Lewis v. School Dist. No. 70*, 523 F.3d 730, 741 (7th Cir. 2008). An interference claim does not require proof of discriminatory or retaliatory intent, but a retaliation claim does. *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012).

McNamara alleges that the District impermissibly interfered with her intermittent FMLA leave and retaliated against her for taking that leave because they did not reduce

10

her workload and assigned her additional evaluations to complete, despite knowing that she was struggling to keep up with her work on the reduced schedule.

### 1. Retaliation

To avoid summary judgment on an FMLA retaliation claim, McNamara must show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action. *Pagel*, 695 F.3d at 631. This can be done using circumstantial evidence, but that evidence must still be such that a reasonable jury could believe "that the protected conduct was a substantial or motivating factor in the employer's decision." *Lewis*, 523 F.3d at 741-42. One way to demonstrate causation is "through evidence that a similarly situated employee who did not engage in the statutorily protected activity received better treatment." *Pierri*, 970 F.3d at 808. As with ADA claims, the ultimate inquiry is whether the plaintiff has offered "evidence that would allow the factfinder to conclude that the employer took the adverse action because of the protected activity." *Id.*

The parties dispute whether the assignment of two additional cases and failure to reduce McNamara's workload constitute adverse employment action. But even if the Court assumes these actions are sufficiently adverse, McNamara cannot avoid summary judgment on her FMLA retaliation claim. She has not produced evidence sufficient that would permit a reasonable jury to find a causal connection between her FMLA leave and the adverse actions she alleges.

McNamara analogizes to *Lewis* to argue that the imposition of unrealistic workload expectations is "relevant and probative evidence of a retaliatory intent," *Lewis*,

11

523 F.3d at 743, and that the Court should therefore deny summary judgment. In *Lewis*, there was evidence the employer knew some of the plaintiff's responsibilities were not being completed adequately, made no effort to mitigate the impact of her intermittent FMLA leave, expected her to complete full-time job requirements, and then discharged her for poor performance. *Id.* The court determined that a reasonable jury could find the plaintiff's leave was illusory and that the district had and declined to use alternative options like shifting the plaintiff's duties or hiring additional help. *Id.*

McNamara acknowledges her case is distinguishable because the plaintiff in *Lewis* was actually discharged, but that is not the only material difference. The plaintiff in *Lewis* identified several other pieces of direct and circumstantial evidence that the court determined were probative of discriminatory motive, including statements by the superintendent of the defendant school district saying the plaintiff was demoted because of absenteeism and by school board members disparaging the FMLA's requirements. *Lewis*, 523 F.3d at 742.

"In the aggregate," the court held, "such direct and circumstantial evidence is sufficient under the direct method of proof to survive summary judgment." *Id.* at 744. By contrast, McNamara points to no additional evidence probative of discriminatory or retaliatory intent. In sum, evidence that the District assigned McNamara additional work and did not redistribute her cases is not sufficient, without more, to permit a reasonable jury to find that the intent behind those acts was to retaliate or discriminate against McNamara for invoking the FMLA.

Accordingly, the District is entitled to summary judgment on McNamara's FMLA retaliation claim.

2.  **Interference**

A plaintiff claiming FMLA interference must show (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of intent to take leave; and (5) her employer "interfered with, restrained, or denied FMLA benefits to which [they were] entitled." *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022). An actual denial of FMLA benefits is not required to violate section 2615(a). *Id.* Rather, "[i]nterference or restraint alone is enough to establish a violation, and a remedy is available under § 2617 if the plaintiff can show prejudice from the violation." *Id.* Only the fifth element is at issue in this case.

Viewing the record in the light most favorable to McNamara and drawing reasonable inferences in her favor, a reasonable jury could find that the District interfered with McNamara's FMLA rights.

McNamara contends that although the District granted her intermittent FMLA leave, it was illusory because the District did not adjust her workload, ignored her requests for assistance, and instead assigned her extra evaluations to complete. She contends that, as a result, she had to perform the duties of a full-time job on part-time hours while taking care of her sick daughter and had to work from home to try to get her work done.

McNamara has offered evidence that would permit a jury to find that although she was told the District intended to hire someone to cover her leave, no one was hired, and her caseload was not reduced before her resignation. McNamara has offered evidence that once her leave began, she reached out to appropriate administrators

13

about her workload on several occasions. She reminded them she was on intermittent FMLA leave and requested assistance. She told them she had not been provided coverage and could not take on extra work. She told them that she was struggling to keep up and that deadlines were going to be missed.

There is evidence that would permit a reasonable jury to find that McNamara's outreach was met with silence, inaction, and the assignment of additional evaluations to complete on an expedited timeline. Although administrators emailed asking school psychologists to help with the cases of another employee who took full time leave, no similar outreach was done to pick up the slack for McNamara. There is evidence that Laurel O'Brien, who was responsible for assigning and managing the workload of school psychologists, could not track the amount of work they were performing, did not track how much McNamara was working, never checked with McNamara to see if her workload had been reduced, and did not know if any of McNamara's duties were assigned to anyone else before she resigned.

The District contends that "the record shows that [it] was not intentionally giving McNamara more work than she would be able to handle or indicating that she would be subject to adverse actions if she did not meet specific performance metrics." Def.'s Reply at 6. But the FMLA does not require employees to show that the interference was intentional or that they faced any particular threat in order to sustain their claim.

The District also disputes whether the cases assigned were new to McNamara or if she had overlooked them, whether and how much McNamara's workload was reduced, if she was required to work from home or not, and other facts material to whether the district interfered with McNamara's FMLA rights. These questions and

determinations of whose story and evidence are more credible are appropriately determined by the finder of fact at trial, not by the Court on summary judgment. *See Ziccarelli*, 35 F.4th at 1089.

Accordingly, the District is not entitled to summary judgment on McNamara's FMLA interference claim.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of the defendant on the plaintiff's claims under the ADA and on her retaliation claim under the FMLA but denies the defendant's motion for summary judgment [dkt. no. 26] regarding the plaintiff's interference claim under the FMLA. The case is set for a telephonic status hearing on September 20, 2023 at 9:00 a.m. to set a trial date and discuss the possibility of settlement. The following call-in number will be used: 888-684-8852, access code 746-1053.

```
                              _____
                                    MATTHEW F. KENNELLY
                                    United States District Judge
```

Date: September 11, 2023